# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAAMIL ALGHANEE,<br><br>                    Plaintiff,<br><br>   v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION ("AMTRAK"),<br><br>                    Defendant. | CIVIL ACTION<br><br>NO.<br><br>*JURY TRIAL DEMANDED*<br><br>**COMPLAINT** |

Plaintiff Kaamil Alghanee, by his undersigned counsel, for his Complaint against defendant National Railroad Passenger Corporation ("Amtrak") avers as follows:

## THE PARTIES

1.  Plaintiff Kaamil Alghanee is an adult citizen and resident of the State of New Jersey, residing at 615 Broadway, Westville, NJ 08093

2.  Defendant National Railroad Passenger Corporation ("Amtrak") is a corporation established by an Act of Congress of October 30, 1970, 84 Stat. 1328 et seq., commonly known as Rail Passenger Service Act of 1970, and amendments thereto, and, at all times material hereto, was engaged in owning and operating a line and system of railroads and railroad properties as a common carrier of goods and passengers for hire in interstate commerce and transportation in, through and between various and several states of the United States, having a principle place of business located at 30th Street Station, in Philadelphia, Pennsylvania.

## NATURE OF THE ACTIONS, JURISDICTION AND VENUE

3. Mr. Alghanee's cause of action against Amtrak arises under the Act of Congress of April 22, 1908, 35 Stat. 65, Chapter 149, and amendments thereto, codified at 45 U.S.C. Section 51 et seq., and commonly known as the Federal Employers' Liability Act (the "FELA").

4. This Court has federal question jurisdiction over Mr. Alghanee's FELA action pursuant to 28 U.S.C. §1331. This Court also has jurisdiction over Mr. Alghanee's FELA action pursuant to 45 U.S.C. Section 56, which vests the State and Federal Courts with concurrent jurisdiction over FELA claims.

5. This Court has personal jurisdiction over Amtrak, which carries on a continuous and systematic part of its general business within the Southern District of New York.

6. Venue is appropriate in the Southern District pursuant to 28 U.S.C. §1391(b)(1) and (c). Amtrak is subject to personal jurisdiction here and so resides in the Southern District.

## COUNT I
## FEDERAL EMPLOYERS' LIABILITY ACT

7. Mr. Alghanee hereby restates and reavers as though fully set forth herein the averments contained in Paragraphs 1 through 6, hereinabove.

8. Defendant Amtrak was at the time of the accident and injuries herein alleged, and is now, doing business within the jurisdiction of this Court as an interstate common carrier

of passengers for hire by rail into and from the various States of the Union and the District of Columbia.

9. At the time of the accident and injuries herein alleged, Mr. Alghanee was employed by Amtrak as a trackman / machine operator and was working in furtherance of interstate commerce.

10. On January 23, 2021, Mr. Alghanee was working with his gang at New York Penn Station, installing joint bars. As co-worker Anthony Saloka was striking a bolt into the rail using a sledgehammer, a washer flew off and struck Mr. Alghanee in the face, causing him to fall face first on the turn switch on the rail.

11. As a result of the accident, Mr. Alghanee suffered severe left eye injuries, enumerated in more detail below, and was left blind in his left eye. He is unable to return to work as an Amtrak trackman / machine operator.

12. At all times hereto, Amtrak owed the duty to its employees, including Mr. Alghanee, to act as a reasonable employer to provide Mr. Alghanee with a safe place to work, and this duty included the obligation to provide Mr. Alghanee with safe and suitable tools and equipment, adequate manpower, adequate supervision, and safe rules, methods and procedures.

13. As part of its duty under the FELA to act reasonably to provide its employees with a safe place to work, Amtrak had an affirmative obligation to inspect its equipment and work areas to discover defects, dangerous and unsafe conditions in its equipment and work areas, and to warn its employees of any defective, dangerous or unsafe conditions.

14. Mr. Alghanee's accident and injuries were caused by Amtrak's negligent violation of the Federal Employers' Liability Act in that Amtrak, through its agents, servants and employees:

(a) Failed to use ordinary care to furnish Mr. Alghanee with a reasonably safe place to work;

(b) Failed to provide Mr. Alghanee with the proper tools and equipment to safely perform his job duties;

(c) Failed to enact and enforce adequate safety rules, methods and procedures;

(d) Failed to warn Mr. Alghanee of the dangers posed by the job task to which he was assigned;

(e) Failed to ensure that the work area was safe and free from objects which could dislodge and strike an employee while installing joint bars;

(f) Failed to train Mr. Alghanee to perform his job tasks safely;

(g) Failed to train Mr. Saloka to perform his job tasks safely;

(h) Failed to provide Mr. Alghanee with adequate manpower to safely perform his assigned task; and

(i) Failed inspect, supervise and oversee Mr. Alghanee's job task to discover dangers or insufficiency in the equipment, work area, methods and manpower.

15. Immediately following the accident, Mr. Alghanee was transported to Bellevue Hospital in New York, NY. He arrived at the emergency room with severe pain over his left eye, inability to open his eye, headaches, bruising and swelling of the left eye. CT of the maxillofacial revealed left lamina papyracea fracture with medial tenting of the left medial rectus muscle, left periorbital soft tissue swelling and air and partial opacification of the left ethmoid air cells. He was discharged January 25, 2021.

16. After discharge, Mr. Alghanee was evaluated by Dr. Carl Rebhun at Bellevue Hospital. He was diagnosed with choroidal rupture and traumatic optic neuropathy.

17. On January 29, 2021, Mr. Alghanee presented to Dr. Yoshihiro Yonekawa at Wills Eye Physicians Mid Atlantic Retina. He was diagnosed with bitreous hemorrhage, primary iritis, blunt ocular trauma, commotio retinae, and open orbital floor fracture. Dr. Yonekawa recommended observation and referred him to Wills Oculoplastic.

18. On February 22, 2021, Mr. Alghanee began treating with Dr. Michael Rabinowitz at Annesley Flanagan Fischer & Associates – Wills Eye Office. CT scans of the orbits were taken and he was diagnosed with deformity of the left orbit and contusion of the left eyeball and orbital tissues and orbital fracture. Dr. Rabinowitz noted the fracture was large medial wall but coiled and minimally displaced.

19. Mr. Alghanee returned to Dr. Yonekawa on February 26, 2021 with complaints of seeing "blackness" in his left eye and only having peripheral vision. Dr. Yonekawa continued macular testing in order to monitor progression of he left eye.

20. On March 23, 2021, Mr. Alghanee returned to Dr. Rabinowitz and was again diagnosed with deformity of the left orbit and contusion of the left eyeball and orbital tissues.

21. Mr. Alghanee returned to Dr. Yonekawa on March 26, 2021 and April 23, 2021. The doctor continued to observe commotio retinae and vitreous hemorrhage with testing. Dr.

Yonekawa recommended continued treatment for open orbital floor fracture and ocular hypertension.

22. Mr. Alghanee saw Dr. Rabinowitz next on May 21, 2021. The doctor noted the swelling in the left eye had subsided but Mr. Alghanee had a droopy upper eyelid or myogenic ptosis.

23. On August 5, 2021, Dr. Rabinowitz advised Mr. Alghanee to repair the left eyelid when it is more stable otherwise it will end up retracted. He was told to follow up in three months.

24. On August 13, Mr. Alghanee returned to Dr. Yonekawa to follow up on the blurred vision to his left eye. After additional OCT Macular testing, Dr. Yonekawa noted that Mr. Alghanee's retina vision will not improve and requested he return for a follow up in six months.

25. Mr. Alghanee continues to experience blindness in his left eye.

26. All of the above-described injuries and treatment were caused and necessitated by Amtrak's negligence as averred above.

27. As a further result of defendant Amtrak's negligence as averred above, Mr. Alghanee has in the past and will incur in the future substantial medical expenses.

28. As a further result of defendant Amtrak's negligence as averred above Mr. Alghanee has endured and will continue to endure serious physical and emotional pain, stress, suffering, immobility, scarring and inconvenience.

29. As a further result of Amtrak's negligence as averred above, Mr. Alghanee has been unable to work since the date of the injury, causing him to suffer lost wages and benefits, and he sustained a diminished earning capacity.

WHEREFORE, Plaintiff Kaamil Alghanee demands judgment in his favor and against defendant National Railroad Passenger Corporation for compensatory damages in an amount to be determined by the jury, together with interest, costs, attorneys' fees and such other and further relief as the Court and Jury shall deem appropriate.

Respectfully submitted,

**THE MYERS FIRM**

By: /s/ William L. Myers, Jr.
William L. Myers, Jr., Esquire
NY Attorney ID No. 568593
1515 Market Street, Suite 810
Philadelphia, PA 19102
(215) 988-1229
*Attorney for Plaintiff Kaamil Alghanee*

Dated: May 5, 2022